IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARLIN SHAWN MILLER, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CASE NO. 1:21-CV-204 |
| | § | |
| | § | |
| TEXAS ALCOHOLIC | § | |
| BEVERAGE COMMISSION, | § | |
| | § | |
| *Defendant.* | § | JURY TRIAL REQUESTED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE COURT:

NOW COMES Plaintiff, Marlin Shawn Miller, complaining of Defendant, Texas Alcoholic Beverage Commission, and files this Plaintiff's Original Complaint alleging the following:

### I. Nature of the Case

1. Plaintiff, Marlin Shawn Miller, brings this action under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e-3, *et. seq.*, for the unlawful employment practices committed by Defendant, Texas Alcoholic Beverage Commission, against Plaintiff by terminating Plaintiff's employment because of his protected activity of opposing discrimination.

### II. Parties and Service of Process

2. Plaintiff is an individual who resides in the Western District of Texas.

3. Defendant, Texas Alcoholic Beverage Commission, is an agency of the State of Texas, with a principal office located at 5806 Mesa Drive, Austin, Texas 78731. Defendant may be served with process by serving its Executive Director, Adrian Bentley Nettles, at 5806 Mesa Drive, Austin, Texas 78731.

### III. Jurisdiction & Venue

4. This Court has jurisdiction over this suit because Miller's causes of action arise under federal law, *i.e.*, Title VII. Venue is proper in the Western District of Texas because TABC's headquarters are in Austin and all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Western District of Texas.

### IV. Factual Background

5. Shawn Miller began working for the Texas Alcoholic Beverage Commission (TABC) in 2006. Miller was a law enforcement agent with TABC. During his employment, he received positive evaluations with no reprimands or discipline. In all his evaluations, Miller met or exceeded expectations. Miller also served as an instructor at several police academies. In 2018, TABC promoted Miller to Agent IV, marking his fourth promotion during his employment at TABC.

6. In August 2018, a lieutenant from TABC's Office of Professional Responsibility (Internal Affairs)[1] contacted Miller concerning a reported incident that occurred at a TABC employee's retirement party in Waco, Texas. After informing the

---

[1] TABC created the Office of Professional Responsibility (Internal Affairs) to "thoroughly, objectively and expeditiously review and investigate all complaints against TABC personnel regarding allegations of illegal acts and/or employee misconduct." *See* https://www.tabc.texas.gov/contact-us/file-a-complaint-protest/file-a-tabc-employee-complaint/ (last visited February 24, 2021). The division has since been renamed Office of Inspector General. *See id*.

lieutenant that Miller had witnessed Acting Chief Victor Kuykendoll physically assault and grab an agent's buttocks, Miller was asked by OPR to prepare a written statement detailing what he had personally witnessed. Miller expressed concerns about future retaliation against Miller because the harasser was the then Acting Chief of Enforcement at TABC, Victor Kuykendoll. After assuring Miller there would be no retaliation against him, Miller provided his statement to OPR.

7. In his August 21, 2018, statement to OPR, Miller described the assault, in relevant part, as follows:

> …Chief Kuykendoll walked over to Agent[2] and me. Agent extended his hand out in an attempt to shake Chief Kuykendoll's hand. Chief Kuykendoll ignored Agent's hand and without warning, grabbed Agent's buttocks. This grab was not a slap nor was it a brush of his hand. The best description I can give is Chief Kuykendoll grabbed Agent in the same manner that someone would pick up a bowling ball. After grabbing Agent, Chief Kuykendoll held onto Agent's buttocks (left cheek) for several seconds and pushed him in an upward manner. The motion appeared to be a lifting motion where several of Chief Kuykendoll's fingers clearly went inside the pants crack of Agent. Agent had a look of shock on his face and immediately jumped upward when Chief Kuykendoll assaulted him…."

8. Miller informed OPR that he believed the assault to be sexual in nature.

9. During the sexual harassment investigation, Chief Kuykendoll made statements to OPR which served as admissions of his misconduct in another pending OPR investigation against Chief Kuykendoll. That investigation involved alleged illegal activity between Chief Kuykendoll and a person on a Terrorist Watch list. OPR found that Chief Kuykendoll's admissions sustained an allegation and constituted

---

[2] While the name of the assaulted TABC Agent is included in the report, it is omitted herein to preserve his privacy.

evidence of Kuykendoll's obstruction of the investigation involving the Terrorist Watch list.

10. Notwithstanding Miller's statements to OPR about Chief Kuykendoll's sexual harassment of a fellow agent, and despite the finding of misconduct of Chief Kuykendoll in the other investigation, TABC promoted Kuykendoll from Acting Chief to Chief of Enforcement in late September 2018.

11. Members of the Texas Alcoholic Beverage Commission Officers Association (TABCOA), which included Miller and the President of TABCOA, Chase Glover, among others, voiced concerns about Chief Kuykendoll and the investigations into his misconduct. Kuykendoll knew that Miller had written a statement against Kuykendoll in the sexual harassment investigation.

12. In or around March 2019, Chief Kuykendoll personally selected Miller and Glover[3] for termination.

13. The termination did not occur immediately because TABC was undergoing Sunset Review by the Texas Legislature.

14. On June 19, 2019, after twelve years of employment, Miller was handed a separation letter that informed him his services were no longer needed, and that his relationship with TABC was ended immediately. The letter did not say why he was fired, nor did the TABC Major say anything as she took Miller's service weapon.

---

[3] In a separate lawsuit, Chase Glover and other TABC agents have brought suit against the Executive Director of TABC relating to their termination. *See Neely Chase Glover v. Adrian Bentley Nettles*, Civil Action No. 1:19-cv-01094-LY, In the United States Court, Western District of Texas, Austin Division. ("The Glover Lawsuit"). Glover settled his claims after filing suit.

The letter simply said: "you are in an at-will position, and may be released from employment without notice and without cause."

15. When TABC filed its response to Miller's EEOC Charge of Discrimination, TABC told the EEOC that Miller was a "low performer," and for that reason, TABC terminated his employment. TABC also referred to Miller as a "mediocre employee" with "recent evaluations show[ing] mediocre performance." TABC further elaborated in a subsequent letter to EEOC, saying "Miller was terminated because his work had become mediocre, and he seemed to stagnate." TABC emphasized, however, that Miller had not "committed any wrongful act resulting [in] his termination."

16. Yet in a subsequent lawsuit, TABC gave a different reason for terminating Miller. Chief Kuykendoll testified that based upon his direct experience supervising Miller, he selected Miller for termination because he believed Miller to be "difficult to manage" and "not supportive of the direction of the agency."

## V. Causes of Action

### *Violations of Title VII (Retaliation)*

17. Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e-3, makes it unlawful for any employer to discriminate or retaliate against an employee because he has engaged in protected activity under Title VII including, but not limited to, opposing any discriminatory practice or participating in an investigation into discriminatory practices.

18. Defendant TABC is an "employer" as that term is defined under Title VII.

19. Miller is an "employee" within the meaning of Title VII.

20. Miller engaged in protected activity under Title VII when he provided a written statement to OPR concerning Chief Kuykendoll's sexual harassment of a TABC agent. Miller's protected activity constitutes opposition to discrimination and also participation in a sexual harassment investigation.

21. TABC retaliated against Miller when it terminated Miller for engaging in protected activity. Chief Kuykendoll, the harasser, knew Miller complained about Kuykendoll's sexual harassment, and then personally selected Miller for termination, which was approved by TABC without investigation.

22. TABC acted willfully in violating Plaintiff's rights under Title VII.

## VI. Damages

23. As a result of the above, Miller has lost past and future wages and benefits of employment. Miller has also suffered compensatory damages in the past and will likely suffer compensatory damages in the future because of TABC's conduct.

## VII. Attorneys' Fees

24. Miller has also had to employ attorneys to vindicate his rights under the law, and therefore, he seeks reasonable and necessary attorneys' fees and costs under Title VII.

## VIII. Administrative Prerequisites

25. All conditions precedent to this suit have been performed or have occurred, including exhausting all required administrative remedies. Plaintiff Miller timely filed a Charge of Discrimination against Defendant TABC with the Equal Employment Opportunity Commission (EEOC), as required by the above-referenced

statute, and received his Dismissal and Notice of Rights from the EEOC on December 16, 2020.

## IX. Demand for Jury Trial

26. Miller hereby respectfully demands a trial by jury of all claims and issues in this cause.

WHEREFORE, Plaintiff, Marlin Shawn Miller, respectfully requests that the Court issue citation for Defendant, Texas Alcoholic Beverage Commission, to appear and answer, and that upon final trial, Plaintiff have and recover a judgment against Defendant for all actual damages suffered and/or incurred by Plaintiff, for pre-judgment and post-judgment interest at the highest rates allowed by law, for court costs, attorneys' fees, and for all other relief to which Plaintiff may be justly entitled.

Respectfully submitted,

SCANES & ROUTH, LLP
7901 Fish Pond Road, Suite 200
P. O. Box 20965
Waco, Texas 76702-0965
(254) 399-8788
(254) 399-8780 (FAX)

BY:   /s/ Joel S. Shields
      Michael L. Scanes
      State Bar No. 17701000
      Email: scanes@scanesrouth.com
      Joel S. Shields
      State Bar No. 24041907
      E-mail: shields@scanesrouth.com

ATTORNEYS FOR PLAINTIFF