IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARLIN SHAWN MILLER, <br> *Plaintiff*, | § § § | |
| v. | § § | Civil Action No. 1:21-cv-204-LY |
| TEXAS ALCOHOLIC BEVERAGE COMMISSION, <br> *Defendant*. | § § § § | |

**DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT**

TO THE HONORABLE JUDGE:

Defendant Texas Alcoholic Beverage Commission ("TABC") files this Response to Plaintiff's Motion for Entry of Judgment [Doc. #53].

## A.  Plaintiff's request for $850,000 in front pay should be denied or reduced.

Relying on his expert Thomas Roney's calculations, Plaintiff asks this Court to award him $850,000 in front pay. Doc #53 at 13-15. Roney's calculations, however, rest on assumptions that are not supported by the evidence presented at trial. Moreover, they fail to take into consideration Plaintiff's substantial award of $250,000 in compensatory damages. Because front pay is a discretionary, make-whole remedy—and Plaintiff was made whole by his $287,000 jury award that included both back pay and compensatory damages—this Court has the discretion to decline to award Plaintiff any front pay.

Alternatively, to the extent the Court determines front pay is appropriate, TABC requests that the Court award front pay in an amount that takes into consideration: (1) Plaintiff's actual salary losses; (2) Plaintiff's substantial $250,000 compensatory damages award; (3) that the evidence presented at trial casting doubt on Plaintiff's ability and/or desire to remain employed at

1

TABC until 2025; (4) the speculative nature of awarding pension-based damages through 2044; and (4) that Plaintiff should not be given extra money to avoid tax treatment issues.

      **1.     Front pay is discretionary and is not warranted in this case.**

The decision to award front pay damages "is governed by the district court's discretion and is not always appropriate." *Floca v. Homcare Health Servs. Inc.*, 845 F.2d 108, 112 (5th Cir. 1988). As a general rule, "[f]ront pay is awarded to meet the goal of Title VII to make whole the victim of discrimination." *Id.* Accordingly, "a substantial liquidated damage award may indicate that an additional award of front pay is inappropriate or excessive." *Hadley v. VAM P T S*, 44 F.3d 372, 376 (5th Cir. 1995). Similarly, a substantial compensatory damages award may indicate that an award of front pay is inappropriate. *See Reynolds v. Octel Communications Corp.*, 924 F.Supp. 743, 748 (N.D. Tex. 1995). "[A]lthough [the Fifth Circuit] will generally accord 'wide latitude' to the district courts in the determination of front pay, [the Circuit] ha[s] also emphasized that such awards must be carefully crafted to avoid a windfall to the plaintiff." *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 491 (5th Cir. 2007) (quoting *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 822 (5th Cir. 1990)).

"Front pay can only be calculated through intelligent guesswork, and [the Fifth Circuit] recognize[s] its speculative character by according wide latitude in its determinations to the district courts." *Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007) (quoting Sellers v. Delgado College, 781 F.2d 503, 505 (5th Cir. 1986)). The Fifth Circuit has identified six factors relevant to the determination of a front pay award: "(1) the length of prior employment, (2) the permanency of the position held, (3) the nature of the work, (4) the age and physical condition of the employee, (5) possible consolidation of jobs, and (6) the myriad other non-discriminatory factors which could validly affect the employer/employee relationship." *Id.* (citing *Renau v. Wayne Griffin & Sons*,

*Inc.*, 945 F.2d 869, 871 (5th Cir. 1991)).

Here, awarding front pay would result in a windfall to Plaintiff. At the time he was terminated from TABC, Plaintiff made approximately $79,000 per year. Doc. #53-1 at 2. The jury awarded him a substantial $250,000 in compensatory damages—over three times his final annual salary. The Court may, and should, consider Plaintiff's compensatory damages award in determining whether front pay is appropriate. *See Reynolds*, 924 F. Supp. at 748. The jury's award of $125,000 in future compensatory damages made Plaintiff whole. Therefore, the Court should decline to award Plaintiff any front pay. *See Floca*, 845 F.2d at 112.

### 2. Alternatively, Plaintiff's request for front pay should be substantially reduced.

Should the Court determine an award of front pay is appropriate, Plaintiff should be awarded an amount far less than the $850,000 he requests. Thomas Roney's calculations rest upon unjustifiable assumptions not supported by the evidence presented at trial.

#### i. Roney's assumption that Plaintiff would have remained employed with TABC until 2025 is unsupported.

In calculating front pay, Roney assumed that Plaintiff would have continued to work for TABC until October 18, 2025. Doc #53-1 at 4. This assumes that Plaintiff: (1) would have voluntarily chosen to remain employed with TABC until 2025; and (2) would not have been terminated for a lawful reason before 2025. Neither assumption is supported by the evidence presented at trial.

Plaintiff was an at-will employee. While Plaintiff now claims he would have continued working for TABC until 2025, his actions during the time he was employed with TABC belie that claim. The Court heard testimony that Plaintiff was negative toward the agency and expressed his negative feelings to other law enforcement agencies. Defendants introduced an audio recording into evidence (recorded by Plaintiff himself) where Plaintiff said TABC was "running off the damn

tracks." Considering Plaintiff's negative views toward TABC at the end of his employment, it is unlikely he would have continued to remain employed with TABC until 2025.

It is also unlikely that Plaintiff would not have been terminated for a lawful reason until 2025. While Plaintiff characterizes his annual evaluations as "positive" during his time at TABC (Doc. #53 at 10), that characterization—as the Court will recall—is a stretch. Plaintiff rarely received any marks above the bare minimum. As multiple supervisors recalled at trial, he was difficult to manage, undermined authority, and could not get along with his coworkers. While the evaluation system in place during Plaintiff's employment was not equipped to capture some of Plaintiff's issues, multiple TABC witnesses testified that a new Guardian system is currently in place that more accurately reflects these problems. Plaintiff's negative feelings toward TABC, along with his attitude and performance issues, are "other non-discriminatory factors which could validly affect the employer/employee relationship" this Court should consider in determining the appropriate amount of front pay. *See Downey*, 510 F.3d at 544. Given these issues, it is unlikely that Plaintiff would have remained employed by TABC until 2025. The Court should reduce Plaintiff's request for front pay accordingly.

    ii.   **Roney's calculations are too speculative.**

While front pay awards are inherently speculative, they must be supported by evidence. *See Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 402 (5th Cir. 2002) (affirming the district court's denial of front pay where an award would be purely speculative). Here's Roney's calculation of $850,000 as an appropriate figure for front pay are built upon multiple assumptions that, taken together, are too speculative to support such an award.

The $850,000 number is a number that represents a lump sum of what Roney expects Miller would have received from his retirement in 2025 until the expiration of his estimated life

4

expectancy—August 2044. *See* Doc. #53-1 at 3. This calculation ignores the possibility of *any* intervening events for nearly 20 years that could affect Plaintiff's compensation.

As explained above, it assumes Plaintiff would have remained employed with TABC until 2025 which, based on the evidence presented at trial, is unlikely. The pension benefits calculated out through 2044 also assumes that Plaintiff will never, in the next 20 years, obtain another position with the State of Texas that could affect the amount of retirement benefits he receives from the State. It further assumes that Plaintiff will never obtain another law enforcement position with another governmental entity that would affect the retirement benefits he receives from that entity. In short, 22 years out is far to speculative to award front pay. *See Peyton v. DiMario*, 287 F.3d 1121, 1129 (D.C. Cir. 2002) (award of 26 years of front pay was unduly speculative and therefore an abuse of discretion).

Perhaps egregiously, Roney's pension calculations are based on the assumption that Plaintiff's salary would have jumped from $79,858 (when he terminated in 2019) to $107,178 in 2024. *See* Doc. #53-1, at 13 (future pension benefit calculations based on $107,178 <u>pre-tax</u> salary). In short, Roney comes to his calculations of a $397,013 pension difference by assuming Plaintiff would receive a 33% salary increase within five years, and then would have that pension difference play out for over 20 years.

Finally, Roney's calculations seek to remove any future tax risk by giving Plaintiff the best tax treatment now, and he mixes after-tax and before-tax calculations. While Roney uses after-tax calculations for front-pay actual earnings, he uses the before-tax $397,013 pension difference calculation. *See* Doc. #53-1, at 13. Of course, pension benefits would be taxed as well, so Roney's gross-up calculations to address tax issues should not be included in any equitable front pay award.

In the event the Court determines that front pay is appropriate, the appropriate measure

would be the calculated lost **actual earnings** of Plaintiff from now through his 62nd birthday (in approximately 3 years). The evidence at trial was that Plaintiff was previously making $79,858/year when he was terminated, and that he is now making approximately $52,000/year. *See also* Doc. #53-1, at pg. 2 ($79,858 salary); pg. 12 ($52,000 salary). Accordingly, the simpler front pay calculations would be:

**($79,858 - $52,000) x 3 years = $87,574 front pay award**.

**B.    Plaintiff's calculations on pre-judgment interest are erroneous.**

While Defendant does not contest that some pre-judgment interest on the $37,500 of backpay is warranted, awarding pre-judgment interest on the emotional distress damages is inappropriate. Here, Plaintiff also seeks pre-judgment interest on the $125,000 of emotional distress damages. Courts may exercise their discretion in not awarding pre-judgment interest on emotional distress or punitive damages. *See e.g., Arbaugh v. Y & H Corp*., 444 F. Supp. 2d 693, 697 (E.D. La. 2006) (not awarding pre-judgment interest on emotional distress damages).

Here, Plaintiff miscalculates, saying, "Simple interest on the **back pay** is $22.26 per day: ($162,500 x 0.05 / 365)." Doc. #53, at 5 (emphasis added). The appropriate back pay calculation would be: **($37,500 x .05)/365 = $5.14/day**. Given that approximately 1,000 days have passed since Plaintiff was terminated on June 19, 2019, the pre-judgment interest calculation should be:

**$5.14/day x 1000 days = $5,140 pre-judgment interest**.

### CONCLUSION

TABC disputes that the trial evidence supports the jury award of $37,500 in backpay and $250,000 in mental anguish, and will file the appropriate Rule 59 motion after a judgment is entered. Beyond the amount that the jury has found, this Court should only add to the judgment $87,574 in front pay damages and $5,140 in pre-judgment interest.

Date: March 29, 2022                                Respectfully submitted,

                                                  KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS ALBRIGHT
Chief - General Litigation Division

/s/ *Drew L. Harris*
DREW L. HARRIS
Texas Bar No. 24057887
LANDON A. WADE
Texas Bar No. 24098560
Assistant Attorneys General
OFFICE OF THE ATTORNEY GENERAL
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, TX  78711-2548
Telephone: (512) 463-2120
Facsimile: (512) 320-0667
drew.harris@oag.texas.gov
landon.wade@oag.texas.gov
***ATTORNEYS FOR DEFENDANT***

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served via ECF, on March 29, 2022, upon the following individual at the listed address:

  Michael L. Scanes scanes@scanesrouth.com
  Joel S. Shields shields@scanesrouth.com
***ATTORNEYS FOR PLAINTIFF***

                                      /*s/ Drew L. Harris*
                                      **DREW L. HARRIS**

7